Johnson, J.
1. Did the district court err in treating the policy of insurance as part of the record ?
That the district court did so treat it is evident, as without so doing no questions of law were presented by the-record.
No objection seems to have been made, either in the common pleas or district court to so treating it.
No suggestion was made, nor motion filed, seeking to eliminating this paper from among those being regarded as part of the record, as the plaintiff had asked that it should be.
He had in his petition expressly filed it “ as a part of his petition,” and had therein, without stating what its requirements and conditions as to him were, alleged that he had; *613 h:ept and performed “ all the requirements and conditions contained in said policy and in the application and survey therein referred to.” The defendant made no objection to this mode of pleading.
On the trial in the common pleas, and, so far as we are advised on error in the district court, the policy was before •the court for all purposes as part of the petition.
We think this plaintiff is in no position now to object. To allow him to do so would enable him to take advantage of his own error, and to the manifest prejudice of defendant.
The averments in the petition, that he had performed all -conditions precedent, refers, as we have seen, to the policy .and application for those conditions.
In Crawford v. Saterfield, 27 Ohio St. 421, the commission' held, that the legal effect of this general averment was, that the plaintiff' had performed each and every act and thing required to be done as a condition precedent to his action, and that while such pleading was subject to a motion to •make more definite and certain, yet it could not be taken ■advantage of on error by the opposite party. Eor a stronger reason, the plaintiff should not be permitted to here complain.
In that ease, as in this, a copy of the contract in hcee verba was made part of the petition. It was said not to be good pleading, but the defect must be remedied by motion. If no objection was thus taken, error would not lie. So, here, the plaintiff has, by express act, attempted to dispense with proper averments, by reference to the conditions in the policy referred to and made part of the petition, and has made a general averment of performance of all those •conditions.
To make that petition complete, reference must be had to the policy.
The plaintiff has himself had the advantage of this mode ■of pleading, and it is now too late for him to complain, when it is evident all parties acted upon the assumption that the policy was a part of the record.
*614 2. Did the district court err iu refusing to give the' charges asked and in charging as stated ?
This question involves two distinct legal propositions:
1. As to the effect of the representations made concerning the mortgage incumbrance on the property at the time-the contract was made.
2. As to the execution of the second mortgage, without-the consent of the defendant.
As to the representations made by plaintiff concerning" the amount of the mortgage.
The policy provides that “the application and description of the property insured and referred to in this policy shall be considered as £art of this contract, and any false-representations, by the assured of the condition or occupancy of the property, or any material fact material to t-he-risk, . . . this policy shall be void.”
The representation was that the mortgage was only $2,000. The truth was, that it was $3,440, including $240 of accrued interest.
That this was a representation material to the risk admits-v of no controversy. Hutchins v. Cleveland Mut. Ins. Co., 11 Ohio St. 480; Davenport v. New Eng. Ins. Co., 6 Cush. 340; Howard v. New Eng. Ins. Co., 10 Cush. 444; Brown v. The Peoples’ Ins. Co., 11 Cush. 280; Jacobs v. Eagle Ins. Co., 7 Allen, 132; May on Ins., § 200 ; Flanders on Ins. 280.
The request to charge was that this representation being' untrue avoided the policy.
The charge given was, that it did not, that it was only a representation, and not a warranty, and was no defense.
No evidence was offered tending to show that the insureds was guilty of moral falsehood or fraud in making this false-statement, other than the presumption that arises from the-fact that it was a mortgage made by himself, and therefore-he knew, or must be presumed to have known, his statement was false.
Erom this fact alone, it might be fairly inferred that the-applicant knew his statement was false. Waiving this con *615 sideration, let us examine the request to charge and the-converse of it, which was given by the court.
It is based on the assumption that there was no intentional fraud by the assured, and that, being a representation merely, and not a warranty, the falsity of the statement would not defeat a recovery.
This policy was issued under an express agreement that, the application and description of the property insured shall be considered part of the contract, and upon the condition that any false representation of any material fact avoided it.
This made the statements as much a part of the contract as if written in the body of the policy.
The two papers must' be treated together as constituting the contract, as if both were embodied in one paper.
An express warranty is always a part of the contract as-completed. A representation is a verbal or written statement made by the assured as to the existence of some fact- or state of facts tending to induce the underwriter to assume the risk.
Warranties are conditions precedent to a valid policy,, whether such conditions are material or not, if the parties-have regarded them as material, and clearly intended them to be so treated.
In such cases, when the parties have stipulated that certain things shall constitute conditions, courts, as a general rule, will not inquire whether they be material to the risk or not. It is enough to know that they influenced the risk, and that the parties have fairly made them the basis of the contract. It does not follow, however, that all statements in the application, and made part of the policy, are necessarily warranties which avoid the contract, if not literally fulfilled. A discussion of this point would lead us beyond the proper scope of this case.
The law of marine insurance undoubtedly is, that a warranty must be exactly and literally fulfilled as a condition precedent, whether in fact material to the risk or not, and the great weight of authority probably is that this is true of fire insurance, though the courts have been astute in *616 discriminating between cases, when the statements are representations, rather than technical warranties, even though called such.
In Glendale Mfg. Co. v. Protection Ins. Co., 21 Conn. 32, it was said: “We are by no means confident that representations in surveys preceding the issue of fire policies, extending, as they do, to the present and future condition < of the property about to be insured, have been considered as technical warranties, to be true to the letter for a long series of years, and not rather as representations, to be at the time and thereafter substantially exact and true. Nor are we certain that a mere reference to these representations, made in the body of the policy, in order to explain the rights and obligations of the parties, does necessarily change their character from representations to warranties.”
We are relieved from the discussion of this question, because it is only a false representation material to the risk that avoids this policy, and this representation, shown to be untrue, was, as to an existing fact, material to the risk.
This being so, the question is, does this representation avoid the policy, without proof of fraud ?
Contracts of insurance, like all others, must have a reasonable construction. Being contracts for indemnity, they should, in case of ambiguity, receive that construction which is consonant with the intention of the parties. Where there are two interpretations equally deducible from the terms, that .which enforces rather than avoids the policy should be preferred. Established principles of construction applicable to other contracts are equally so in insurance contracts.
At common law, a warranty of a fact, in a material matter, is a guaranty that the fact is as stated, and it is sufficient to show its non-existence without also showing that it was fraudulent, but in case of a representation, not amounting to a warranty, it must appear that it was fraudulent as well as false.
In this case, therefore, if the plaintiff warranted that the property was only incumbered $2,000, when in fact the *617 mortgage was $3,440, he is bound, though not guilty of fraud or moral falsehood.
In this contract this material representation is expressly made a condition in the policy, and therefore is a warranty. The fact that it was not true of itself avoided the policy by the terms of the contract.
Instead of a contract of insurance, suppose it was a contract of sale of this land by plaintiff to defendant for an ■agreed consideration, the vendor covenanting that the property was not incumbered beyond $2,000, and the fact should turn out that the mortgage was $3,440. Does any one claim that the vendee could not recover without showing fraud or moral falsehood ?
Having expressly covenanted that the property was only incumbered for $2,000, be would be bound to make that •covenant good.
This is equally true when the covenant is as to a condition precedent.
In Davenport v. The New England Ins. Co., 6 Cush. 340, the question was: “Is the property incumbered?” The answer was in the negative. The court say, after holding that the fact is material: “ It is manifest that the defendants deemed this information material.”
“ The plaintiff having given an untrue answer, whether by accident, mistake, or design, it matters not, to a direct, plain, and practical question, can not now be heard to say it was immaterial.”
In Hayward v. The New England Mut. Fire Ins. Co., 10 Cush. 444, the insured was asked: “ ‘ Is the property incumbered ? If so, how much ?’ The answer was: ‘About $3,000.’ In fact, it was mortgaged for $4,000. It is said this inquiry was material, and the defendant had a right to require that the answer should be substantially true.” And it was held that, not being substantially true, he can not recover.”
To the-same effect is Brown v. The Peoples’ Mut. Ins. Co., 11 Cush. 280, where the question was, whether the property was incumbered, to whom, and what amount. The an *618 swer was : “About $4,000 ; to A. B.” 'When in fact there were two mortgages ; one to A. B. for $3,600, and another to J. P. for $1,100. Held, that the policy was void.
In that case the condition was : “ If the representations-made in the application do not contain a just, full, and true exposition of all the required facts and circumstances in regard to the title, condition, situation, value, and risk of the property insured, the policy shall be void.”
In Jacobs v. Eagle Ins. Co., 7 Allen, 132, the answer was-that there were two mortgages of $2,700 in all, when in fact there was $300 of accrued interest. The condition there was much like the case at bar : “ If any of the above-statements are false or incorrect, any policy issued thereon shall be void.” The representation avoided the policy.
Anderson v. Fitzgeral, 4 House of Lords Cases, 484, may be regarded as the leading case upon this point, because of the great deliberation it received at the hands of the most eminent jurists of Great Britain.
There the policy contained a proviso that “ if any thing-so warranted shall not be true, or if a circumstance material to this insurance shall not have been truly stated, or shall have been misreprented or concealed, or any false statements-made, etc., the policy shall be void.”
The point on which the case finally turned was whether it should be left to the jury to say whether certain answers-made by the insured were material as well as false, and it was held that the representations being made part of the-contract, their truth and not their materiality was the question'for the jury.
In discussing this point, the difference between a moral falsehood and a representation untrue in fact, but not intentionally so, was considered, and a majority of the judges-held that the condition of the policy was broken if the representations were untrue, though there was no intentional falsehood.
Baron Parke says: “A doubt may possibly exist whether the word ‘ false ’ is to be understood in the sense of false *619 in point of fact or morally false, though I believe most of' us think that it is not to be limited to moral falsehood.”
This case is cited and approved in Jeffries v. Life Ins. Co., 22 Wallace, 47.
In that case the distinction is noted between answers in an application which do not relate to the risk, that do not necessarily avoid the policy, unless they influence the mind of the underwriter; and those where it is expressly covenanted as a condition of liability that the statements and declarations contained in the application are true.
The court say, that when the truth of such statements forms the basis of the contract, and are expressly made conditions of liability, they know of no respectable authority which holds that the policy is not avoided.
The case of Protection Ins. Co. v. Harmar, 2 Ohio St. 452, is relied on by plaintiff in error, and deserves special attention. The distinguishing feature of that case is, that the representations made in the application were not warranties, because not made so by the terms of the policy. In that case the only reference to the application was in these-words: “ Eor a more particular description of said premises see survey No. 74, furnished by the insured, which is hereby made part of this policy.”
Only so much of the application as constituted a description was held to be made part of the policy.
The other answers were held to be representations only, and not warranties. In the case at bar, the entire application, including the statement as to incumbrances, as well as-a description of the property, is expressly made the basis of the contract. The same distinction is found to exist in other cases relied on by the plaintiff.
2. The second request which was refused was that if after said policy was issued the plaintiff further incumbered the property without defendant’s consent, the plaintiff’ could, not recover.
The fact was proved that the plaintiff did, without such' .consent, make a second mortgage for some $400.
The condition of the policy on that subject is in these- *620 words: “ If the property be sold or transferred, or any ■ change take place in the title, either by legal process or ■othei’wise, . . . this policy shall be void.”
We do not think that the execution of a second mortgage on the real estate was, in any proper interpretation ol the words, either a sale, transfer, or change of title, which avoided the policy.
This conclusion is supported by numerous well considered cases. The Com. Ins. Co. v. Spankneble, 52 Ill. 58; Aurora Fire Ins. Co. v. Eddy, 55 Ill. 213; May on Ins., § ,269., and cases in note.
Judgment of the district court reversing the common pleas affirmed, and cause remanded.